IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1. MEGAN CLARK, as next friend and parent of minor child, J.C. and<br>2. J.C., a minor child,<br>    *Plaintiffs*,<br><br>v.<br><br>1. INDEPENDENT SCHOOL DISTRICT I-1 BRYAN COUNTY,<br>2. SILO PUBLIC SCHOOLS a/k/a SILO PUBLIC SCHOOLS,<br>3. JEREMY ATWOOD, in his individual and official capacity,<br>4. KATE McDONALD, in her individual and official capacity, and<br>5. STORMY LEWIS, in her individual and official capacity,<br>    *Defendants*. | Case No. CIV-22-190-RAW |

## ORDER

This action arises from a drug test of J.C. at Silo Public Schools middle school on or about August 17, 2021. Specifically, Plaintiffs allege that he was subjected to a "non-random, non-targeted, broadly applied drug test to 'all new students' and/or to 'all students previously enrolled at Epic Charter Schools.'" Petition, Docket No. 2-1, at 5. Plaintiffs allege the test was "insulting, degrading, and humiliating" and "included Defendant Atwood following [J.C.] into the restroom to complete the testing screen process." *Id*. at 4.

Plaintiffs brought suit in the District Court of Bryan County on May 31, 2022, alleging claims for unreasonable search and seizure in violation of the Fourth and Fourteenth Amendments, negligence, and intentional infliction of emotional distress. Plaintiffs also seek punitive damages. Defendants filed their notice of removal on June 29, 2022. Now before the

court is the motion to dismiss filed by the Individual Defendants (Jeremy Atwood, principal; Kate McDonald, superintendent; and Stormy Lewis, teacher and/or counselor) [Docket No. 6], Plaintiffs' response [Docket No. 9], and the Individual Defendants' reply [Docket No. 10].

For purposes of the motions to dismiss, the court accepts as true all well-pleaded facts in the Petition and construes those facts in the light most favorable to Plaintiffs. *Western Watersheds Project v. Michael,* 869 F.3d 1189, 1193 (10th Cir. 2017). Of course, the court does not accept as true conclusory statements or legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Plaintiffs must nudge their "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. The well-pleaded facts must "permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. In a case against multiple defendants, "it is particularly important . . . that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations . . . ." *Robbins*, 519 F.3d 1242, 1250 (10th Cir. 2008) (emphasis in original).

Ultimately, the "*Twombly/Iqbal* standard is a middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (citing *Robbins v. Oklahoma*, 519 F.3d at 1247). "In other words, *Rule 8(a)(2) still lives*." *Id*. (emphasis added). "Under Rule 8, *specific facts are not necessary*; the statement need only give the defendant fair

notice of what the claim is and the grounds upon which it rests." *Burnett v. Mortgage Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235-36 (10th Cir. 2013) (quoting *Khalik*, 671 F.3d at 1191) (emphasis added).

I. **Section 1983 Official Capacity Claims**

The Individual Defendants first argue that the claims pursuant to § 1983 for unreasonable search and seizure against them in their official capacities are duplicative of the claim against the School District. The court agrees. "An action against a person in his official capacity is, in reality, an action against the governmental entity for whom the person works." *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1009 (10th Cir. 1998). Accordingly, courts routinely dismiss as redundant official capacity claims when the responsible governmental entity has also been sued. *Moore v. Tulsa*, 55 F.Supp.3d 1337, 1349 (N.D. Okla. 2014) (citing *Griffin v. Indep. Sch. Dist. No. 1 of Tulsa Cnty, Okla.*, No. 13-CV-0702-CVE-FHM, 2013 WL 6048988, at *3 (N.D. Okla. Nov. 14, 2013). The official capacity claims are hereby dismissed.

II. **Section 1983 Individual Capacity Claims & Qualified Immunity**

The Individual Defendants also each assert the defense of qualified immunity as to the § 1983 claims for violation of the Equal Protection Clause. Qualified immunity "shields public officials from damages actions unless their conduct was unreasonable in light of clearly established law." *Turner v. Oklahoma Oklahoma Cnty. Bd. Of Cnty. Comm'rs.*, 804 Fed.Appx. 921, 925 (10th Cir. 2020) (citation omitted). "Although qualified immunity defenses are typically resolved at the summary judgment stage, district courts may grant motions to dismiss on the basis of qualified immunity." *Myers v. Brewer*, 773 Fed.Appx. 1032, 1036 (10th Cir. 2019) (citing *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014).

At the motion to dismiss stage, however, defendants are subject "to a more challenging standard of review than would apply" at the summary judgment stage. *Id.* "At the motion to dismiss stage, it is the defendant's conduct *as alleged in the complaint* that is scrutinized for objective legal reasonableness." *Id.* (citation omitted and emphasis in original). Accordingly, when a defendant raises a qualified immunity defense in a motion to dismiss, the court employs a two-part test to determine: "(1) whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and (2) whether the right at issue was clearly established." *Id*. (citation omitted). The court may "decide which of these two prongs to address first, and need not address both." *Turner,* 804 Fed.Appx. at 925 (citation omitted).

"A plaintiff may show clearly established law by pointing to either a Supreme Court or Tenth Circuit decision, or the weight of authority from other courts, existing at the time of the alleged violation." *Knopf v. Williams*, 884 F.3d 939, 944 (10th Cir. 2018) (citation omitted). A law is not clearly established unless existing precedent has "placed the statutory or constitutional question beyond debate." *Id.* (citation omitted). This is an objective test. *Brown*, 662 F.3d at 1164. The court must not "define clearly established law at a high level of generality." *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015) (citing *Ashcroft*, 563 U.S. at 742); *Knopf*, 884 F.3d at 944 (citing *Ashcroft*, 563 U.S. at 742). Of course, a prior case need not have *identical* facts. *Perry v. Durborow*, 892 F.3d 1116, 1126 (10th Cir. 2018); *Patel v. Hall*, 849 F.3d 970, 980 (10th Cir. 2017). Still, the "clearly established law must be 'particularized' to the facts of the case." *Knopf*, 884 F.3d at 944 (citation omitted).

### A. Prong One – Whether the Allegations Make out a Constitutional Violation

The court first looks to whether Plaintiffs have stated a claim against any of the Individual Defendants. The Fourth Amendment protects the "right of people to be secure in their

persons, houses, papers, and effects, against unreasonable searches and seizures." *Board of Educ. of Indep. Sch. Dist. No. 92 of Pottawatomie Cnty. v. Earls*, 536 U.S. 822, 828 (2002). "Searches by public school officials, such as the collection of urine samples, implicate Fourth Amendment interests." *Id*. Courts must review a school district's policies for "reasonableness." *Id*. "[I]ndividualized suspicion may not be necessary when a school conducts drug testing." *Id*. at 830. "A student's privacy interest is limited in a public school environment where the State is responsible for maintaining discipline, health, and safety." *Id*. Students who participate in extracurricular activities subject themselves to intrusions that other students do not. *Id*. at 830-38. "To balance the students' privacy rights with the school's custodial and tutelary responsibility for children, a seizure need only be justified at its inception and reasonably related in scope to the circumstances which justified the interference in the first place." *Couture v. Board of Educ. of Albuquerque Public Schs.*, 535 F.3d 1243, 1250 (10th Cir. 2008) (citations and internal quotations omitted).

  Plaintiffs allege that J.C. did not participate in sports, band, clubs, or other extracurricular activities, and that he was pulled for a drug test as part of a "non-random, non-targeted, broadly applied drug test to 'all new students' and/or to 'all students previously enrolled in Epic Charter Schools.'" Docket No. 2-1 at 4-5. Plaintiffs allege that Principal Atwood took J.C. to the high school gymnasium and followed him "into the restroom to complete the testing screen process." *Id*. at 4. Plaintiffs allege that Superintendent McDonald "adopted and/or ratified the policy of conducting non-random, non-targeted, broadly applied drug testing in violation of the Constitutional rights of the Plaintiffs" and that she was negligent in her supervision and retention of Principal Atwood. Plaintiffs allege that after the drug test, Ms. Lewis, a teacher and/or counselor, "met with Plaintiffs and commented that Plaintiff should be embarrassed and

otherwise contributed to the damages suffered by Plaintiffs associated with the unlawful search and seizure . . . ." *Id*. at 5.

The court finds that Plaintiffs have sufficiently alleged a claim for unreasonable search and seizure against Principal Atwood and Superintendent McDonald. While the court is not certain what Plaintiffs mean by "non-random, non-targeted," Plaintiffs have pleaded that these Defendants broadly applied drug testing to all new students and/or all students coming in from Epic Charter Schools without any justification.

Ms. Lewis is entitled to qualified immunity. Plaintiffs allege only that after the drug test, she told Plaintiffs that J.C. should be embarrassed. This is wholly insufficient to state a claim for unreasonable search and seizure. In their response, Plaintiffs argue that she also failed to intervene. Plaintiffs have not alleged that Ms. Lewis had any authority over Principal Atwood. The conclusory allegation that she "otherwise contributed to the damages suffered by Plaintiffs" is also insufficient. The § 1983 claim against Ms. Lewis in her individual capacity is dismissed.

**B.  Prong Two – Clearly Established Law**

The Individual Defendants focus solely on the first prong of the qualified immunity analysis, stating in a footnote that they do not concede that Plaintiffs have demonstrated that the rights infringed upon were clearly established at the time of the alleged unlawful activity. The court believes it is clearly established that a school district and its officials may not invade a student's privacy to conduct a drug test unless it is "justified at its inception and reasonably related in scope to the circumstances which justified the interference in the first place." *Couture*, 535 F.3d at 1250.

### III.     Negligence Claims Against Atwood and McDonald

Principal Atwood and Superintendent McDonald argue that the negligence claims against them should be dismissed pursuant to Oklahoma's Governmental Tort Claims Act ("GTCA"), which provides: "Suits instituted pursuant to the provisions of this act shall name as defendant the state or the political subdivision against which liability is sought to be established.  In no instance shall an employee of the state or political subdivision acting within the scope of his employment be named as defendant . . . ."  51 OKLA. STAT. § 163(C).  The GTCA defines "scope of employment" as "performance by an employee acting in good faith within the duties of the employee's office or employment or of tasks lawfully assigned by a competent authority . . . ."  51 OKLA. STAT. § 152(12).

Principal Atwood and Superintendent McDonald argue that it is clear that Plaintiff's allegations encompass conduct that occurred while they were acting within the scope of their employment.  The court agrees.  Plaintiffs argue that they acted maliciously towards J.C. by taking advantage of their authority to humiliate and degrade him.  Nevertheless, Plaintiffs have not alleged that either Principal Atwood or Superintendent McDonald acted upon any motivation to maliciously target J.C. to humiliate and degrade him.  Instead, they alleged only that Principal Atwood, following a broadly applied policy of testing all new students and/or students previously enrolled in Epic Charter Schools, subjected J.C. to a drug test and followed him into the bathroom to complete the testing process.  The negligence claims are not properly brought against Principal Atwood and Superintendent McDonald; thus, they are dismissed.

### IV.     Intentional Infliction of Emotional Distress

In Plaintiffs' fifth cause of action, they state that the "actions of Defendants constitutes the intentional infliction of emotional distress."  To state a claim for intentional infliction of

emotional distress in Oklahoma, a plaintiff must allege: "(1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." *Computer Publ'ns, Inc. v. Welton*, 49 P.3d 732, 735 (Okla. 2002). Plaintiffs' allegations are not sufficient to state a claim for intentional infliction of emotional distress against any of the Individual Defendants.

Plaintiffs allege that Principal Atwood took J.C. to the gymnasium for a drug test and followed him to the restroom to complete the process. Even if this was intentional, reckless, extreme, or outrageous, Plaintiffs have alleged no facts in support of their claim that J.C. suffered severe emotional distress. Plaintiffs have no alleged no facts in support of their claim that Superintendent McDonald did anything extreme or outrageous. And Plaintiff's allegation that Ms. Lewis later told J.C. that he should be embarrassed is again wholly insufficient to state a claim. The claims for intentional infliction of emotional distress are dismissed.

V.      **Punitive Damages**

The Individual Defendants briefly argue that Plaintiffs are not entitled to punitive damages, as all claims should be dismissed. As the § 1983 claims against Principal Atwood and Superintendent McDonald remain, the court will not dismiss Plaintiffs' request for punitive damages at this time.

VI.     **Summary**

For the reasons stated above, the motion to dismiss by the Individual Defendants [Docket No. 6] is hereby GRANTED in part and DENIED in part. The § 1983 claims against the Individual Defendants in their official capacities are dismissed. The § 1983 claims against Ms.

Lewis in her individual capacity is dismissed.  The § 1983 claims against Principal Atwood and Superintendent McDonald in their individual capacities remain.

The negligence claims against Principal Atwood and Superintendent McDonald are dismissed.  The intentional infliction of emotional distress claims are dismissed.  The punitive damages claims remain.

**IT IS SO ORDERED** this 1st day of December, 2022.

_____
**THE HONORABLE RONALD A. WHITE**
**UNITED STATES DISTRICT JUDGE**
**EASTERN DISTRICT OF OKLAHOMA**